THE STATE v. CAWOOD et al.

1. A confederacy to do an unlawful act, to the injury of another, is suffici-
cient to sustain an indictment for a conspiracy; it is not necessary that
such act be actually committed.
2. A conspiracy is punishable by fine and imprisonment, as a misdemeanour.
3. In criminal cases, where not affected by statute, the common law of En-
gland is in force in this State, so far as consistent with the spirit of our
institutions.
4. And though the common law punishment in some cases may be inapplica-
ble, the offence may nevertheless be punished as a misdemeanour.

THOMAS CAWOOD, FRANKLIN BROWN, and TAYLOR
BROWN, were indicted in the Circuit Court of Jefferson
county, for a conspiracy, and at October term, 1829,
were found guilty and fined by the verdict of a jury. A
motion being made to arrest the judgment, the presiding
Judge referred the question of the legality of the convic-
tion to this Court, under the provisions of the law for de-
termining questions novel and difficult.

The indictment charged, that the defendants "wickedly
and maliciously devising and intending unjustly to vex,
oppress John Self, and to deprive him of his good name, fame,
credit and reputation, &c. on &c. at &c. wickedly and un-
lawfully among themselves, did combine, conspire, con-
federate and agree, falsely and without any reasonable or
probable cause whatsoever, to charge and accuse the said
John Self with having stolen, taken and carried away,
feloniously, a certain bank note, for the payment of one
dollar, of the value of one dollar, on the Augusta Insur-
ance Company," &c. And that "the said Franklin
Brown, on, &c. at &c. in pursuance of, and according to
said conspiracy, combination, confederacy and agreement,
between them, &c. did say to the said John Self, that he
the said John Self was a man of credit, and that he, the
said John Self, had better make it up than have his credit
blasted." And that the said Franklin, in pursuance of
said combination, conspiracy, &c. so had; &c. did, on &c.
at &c. unlawfully and wickedly exact, take and receive,
of and from the said John Self, a sorrel mare, of the goods
and chattels of the said John Self, of the value of fifty dol-
lars, for and as a compensation for the pretended offence
above mentioned; whereas in truth and in fact, the said
John Self never was guilty of any such offence, &c. To

the great damage, &c. and against the peace and dig-
nity, &c.

JANUARY 1830.

The State
v.
Cawood et al.

SHORTRIDGE and PECK for the defendants, contended
that the judgment should be arrested:

1. Because a conspiracy is not an offence reached or
punishable by the laws of this State. [a]

2. Because the indictment itself is insufficient. It al-
leges only, that they conspired to charge and accuse,
without averring that the charge was to be by indictment
before a competent Court, or in what manner, or that any
act was done. It should also be expressly averred that
the defendants did "falsely charge." It has not the legal
precision which is necessary. [b]

STEWART, for the State, insisted that a conspiracy is
an offence at common law, and that as such, not being pro-
vided for particularly by our statute of crimes and punish-
ments, it was punishable as at the common law, as provided
by the general clause of the statute, which is to that effect;
that as to the form of the indictment, no more certainty is
required in an indictment than in a declaration, and that
it is according to the authorities and precedents.

[a] Declaration
of Rights,
Const. sec.
12. Laws of
Ala. 915.
Schedule of
Con. sec. 5.
Laws of Ala.
932--3. Ibid,
214, sec. 45.
1 Hawk. P.
C. 449.
Wheeler's
Crim. Law,
149, note.
[b] 2 Burr. 993:
999. 2 Blk.
Com. note 19,
p. 92. 2 Mass.
536--37. 3
Burr. 1321.
Crown Cir.
Com. 243--4:

By JUDGE COLLIER. The points insisted on, pre-
sent for our consideration, two questions. 1. Is a con-
spiracy an indictable offence by the laws of this State? 2.
Is the indictment sufficient in law?

It was conceded in argument, that a conspiracy was
punishable at common law, but that we had not adopted
it as an offence in our code of criminal jurisprudence.
This objection we think is not sustainable; yet for its
novelty, it merits consideration. By the 2d article of the
ordinance of 1787, "for the government of the Territory
of the United States, North West of the Ohio," which
was afterwards made the fundamental law of the Missis-
sippi Territory, it is provided that "the inhabitants of the
said Territory shall always be entitled to the writ of *habeas
corpus*, and to the trial by jury; to a proportionate repre-
sentation of the people in the legislature, and to judicial
proceedings according to the course of the common law."
This provision was doubtless made with reference to the
common law of England, and hence that law need not have
been declared to be in force here by express enactment;
but if express legislation were necessary, the part of the
ordinance referred to, may be considered as having that

46

JANUARY 1830.

The State
v.
Cawood et al.

effect. We cannot yield our acquiescence to the proposition, that the common law of England was abrogated by our secession from that country, although aware that this doctrine is sustained by some respectable names. We are willing to admit, that as the common law of England, it no longer obtains, yet as the law of the different members of the union, in which it once obtained, it still maintains validity without the aid of legislative enactment, so far as compatible with the genius of our institutions.

I take it then as most obvious, that Congress designed to make the common law of England, so far as applicable, the rule of action, both in civil and criminal proceedings in the Mississippi Territory. This idea, in regard to crime, is strengthened by the 45th section of the "act for the punishment of crimes and misdemeanours, originally passed in June, 1802, but re-enacted with amendments in 1807." [a] After the enumeration of many offences, among which conspiracy is not included, the section referred to, declares "that every other felony, misdemeanour or offence whatsoever, not provided for by this, or some other act of the General Assembly, shall be punished as heretofore by the common law." This act was enacted upon the hypothesis, that the common law was in force here; or it would have specifically mentioned the offences which were understood to be punishable.

*a* Laws of Ala. 214.

This being all the written law upon the subject, existing anterior to the adoption of our constitution, the 5th section of the schedule of that instrument, declares that "all laws and parts of laws, now in force in the Alabama Territory, which are not repugnant to the provisions of this constitution, shall continue and remain in force as the laws of this State, until they expire by their own limitation, or shall be altered or repealed by the legislature thereof." By this section it is clear, that all laws whether unwritten or statute, if consistent with the constitution, are continued in force.

It is proper to consider now, what conspiracies are punishable by the common law. It was insisted in argument, that to make the defendants criminally amenable to the laws, it was necessary that their unlawful intention should have developed itself by some advances towards its consummation. We think differently, and believe that the brief definition of the offence, given by Lord Coke, and relied on by the counsel for the plaintiffs in error, as conducing to that conclusion, if to be understood literally, is

too contracted. Numerous cases of conspiracy have been adjudicated in the Criminal Court of New York, which are reported in the New York City Hall Recorder; some expressly upon common law principles, and none, so far as we have been able to discover, on a statute; all of which inculcate a doctrine very different from that of Lord Coke. It is there held, [a] that to sustain an indictment for a conspiracy, it is incumbent on the public prosecutor to shew that two or more persons confederated together to do an act known by them at the time to be unlawful, and without colour of right; or to prove some facts from which such a confederacy can be reasonably inferred. It is also there held to be unnecessary in a prosecution for a conspiracy, to shew that any step was taken by the conspirators or either of them, to consummate the act agreed to be done, it is sufficient if an agreement to do some unlawful act existed. [b] It is further held, that an indictment for a conspiracy to cheat or defraud an individual of his money or goods, may be maintained though the means be not charged by which the conspiracy was to be effected. [c] In a cause which was there argued elaborately by very eminent counsel, upon the common law doctrine, [d] it is held that any confederacy to do that which will injure an individual, is a conspiracy, though it might be just and lawful for either of the parties to such confederacy individually to meditate and accomplish such act. [e] I will remark, that the cases quoted from the City Hall Recorder, were argued by the most distinguished lawyers of New York, and determined by some of the ablest jurists of that State; and as authority, are therefore very respectable.

It cannot be, as insisted by the counsel for the plaintiffs in error, that a conspiracy is not an offence known to our laws; because the villanous judgment which was awarded to it by the common law, would not be tolerated by our constitution, as being, if not cruel, at least unusual. Without inquiring whether a conspiracy which did not suppose an accusation of some crime punished capitally, or some crime of the species of *crimen falsi*, has been thus rigorously punished, we are prepared to say, that if the constitution repealed the appropriate common law punishment, the offence still continues, and may be punished as all other misdemeanours to which no other punishment was assigned, by fine and imprisonment. This doctrine in the case of a common scold, underwent a very able discus-

JANUARY 1830.

The State
v.
Cawood et al.

[a] New York City Hall Recorder, 4th vol. pages 1 and 12.

[b] Ibid p. 121.

[c] Ibid, vol. 5, p. 112.

[d] Ibid, vol. 6, p. 33.

[e] See also Jacob's Law Dict. Title, Conspiracy. Crown Civil Com. 280. Hawk. P. C. b. 2. c. 25, sec. 116, page 71. 4 Blkst. Com. 158--9 Ib. Christ. note 4.

sion in the Supreme Court of Pennsylvania a few years ago, in which Judge Duncan delivered a very learned opinion, deciding, that though the ducking stool could no longer be used, fine and imprisonment might be substituted. And we believe, in the celebrated case of the *United States v. Ann Royall,* under the influence of the common law, the defendant was punished by fine and imprisonment. Having shewn, as we believe, that a conspiracy is an offence punishable by our laws, we proceed to consider the sufficiency of the indictment.

The indictment, with only slight and immaterial variations, conforms to the precedent in 3 *Chitty's Criminal Law,* a which, on objection, was holden to be good in 3 *Burrows.* b If the cases to which we have referred, as shewing the essentials to constitute a conspiracy, are founded in correct ideas of the offence at common law, and of this, we do not doubt, we are at a loss to conceive to what part of the indictment exception can be taken; and have therefore no hesitancy in declaring that the judgment must be affirmed.

Judgment affirmed.

*The State v. Cawood et al.*

JANUARY 1830.

*a* Page, 1175.

*b* Page, 1320.