**J. C. PENNEY COMPANY et al., Appellants,**

v.

**John L. REYNOLDS et ux., Appellees.**

No. 5353.

Court of Civil Appeals of Texas.

El Paso.

Oct. 28, 1959.

Rehearing Denied Dec. 2, 1959.

Turpin, Kerr & Smith, Max N. Osborn, Midland, for appellants.

George M. Kelton, Odessa, for appellees.

FRASER, Justice.

This is an appeal from a judgment awarding the appellees the sum of $2,000 in a case alleging malicious prosecution and false imprisonment. The case was tried to a jury. The facts, generally speaking, are as follows: Appellee had, in the summer of 1955, given a check to defendant, J. C. Penney Company, for the sum of $6.54. This was final payment on a lay-away plan for merchandise which she took home with her upon the store's acceptance of the check. The check was actually in the form of a draft, and appellee, in her own handwriting had written in the name of the bank as "First National Bank" (of Odessa, Texas). This, appellee admits, was a mistake, as she had not had an account in that bank for several years. She did have an account in the First State Bank of Odessa. Appellant J. C. Penney Company remains the only defendant, as the justice of the peace, co-defendant, was dismissed from the case. Appellant maintains that the store tried for several months to collect the check and, being unsuccessful, took the check down to the courthouse. This was done by a Mr. Wealand, Assistant Manager of appellant company. The district attorney was at that time handling the county attorney's office, as he was ill. It seems undisputed that a secretary of the county attorney's office directed or conducted Mr. Wealand to the office of Mr. Boyt, Justice of the Peace. The record discloses that Mr. Wealand asked Judge Boyt if he could collect this check, along with some others. The justice of the peace advised Mr. Wealand he would have to sign a complaint, which Mr. Wealand did, and apparently had no further dealings in the matter. The complaint was not sworn to—merely signed by Mr. Wealand. The justice of the peace testified that he then took this and other complaints and issued warrants upon them, and took the warrants to the sheriff's office. A deputy sheriff, named Wilkerson, then went to the home of appellee and told her that he had a warrant for her arrest. He told her she could come to the courthouse in her own car, but she apparently preferred to ride with him, which she did, after the deputy sheriff permitted her to call her attorney. Upon her arrival at the office of the justice of the peace, she was told about the check and that the matter would cost about $30, of which the largest part would be a fine. Having called the First State Bank and ascertained that she did have an account there, the justice of the peace advised her there would be no fine, and that the entire matter would be cleared up by her taking the money to J. C. Penney Company for the amount of the check. This she declined to do, and threw, or put, the money down on the desk of the justice of the

peace, after having borrowed a dollar or so from Deputy Sheriff Wilkerson to make up the necessary amount. It appears she was in the office of the justice of the peace for approximately ten minutes. The officer then drove her back home.

The jury found:

(1) That Mrs. Reynolds was not guilty of the offense of swindling by worthless check;

(2) That J. K. Wealand acted with probable cause in making the complaint in question;

(3) That J. K. Wealand did not act with malice in making the complaint;

(4) That the complaint was signed for the specific purpose of collecting the money on the check;

(5) That Mrs. Reynolds was not acting under duress in paying the money on the check to A. P. Boyt;

(6) That Mr. Wealand did not make a full disclosure to the secretary of the County Attorney with respect to the check;

(7) That Mr. Wealand did make a full disclosure of the facts to A. P. Boyt;

(8) That Mr. Wealand made the complaint upon the advice of A. P. Boyt;

(9) That the arrest and detention of Mrs. Reynolds was not the result of an honest mistake upon the part of A. P. Boyt and the defendants;

(10) That appellees had sustained damages in the amount of $2,000; and

(11) That the appellees were not entitled to any exemplary damages.

■ First of all, we think that appellant's first point is good, in that the findings of the jury have obviously exonerated appellant from the charge of malicious prosecution, probable cause and malice being necessary component parts of such offense; and so we feel that the matter of malicious prosecution was removed from the case by the action of the jury with regard to Issues 2 and 3.

With regard to appellant's second point, we think it is good in principle, in that we have carefully considered this record and have reached the conclusion that the evidence does not disclose liability on the part of the appellant.

■ In the first place, appellant testified that numerous telephone calls had been made to appellee's home; that a conversation had been had by a store employee with a little girl at the home; that the check had been presented numerous times and payment refused on the grounds of "account unknown." These facts undoubtedly influenced the jury in their finding that Mr. Wealand acted with probable cause in making the complaint, and did so without malice. Proceeding from this promise, we cannot find where the appellant actually caused the arrest and detention, if any, of appellee. We have carefully considered the testimony, and it is clear that all Mr. Wealand did was to ask the justice of the peace if he could collect this check. Mr. Wealand testified over and over that all he wanted was the money on the check. There is no evidence that Mr. Wealand requested or authorized the issuance of a warrant. There is no evidence that he knew a warrant was going to be issued. The magistrate or justice of the peace testified that, in signing the complaint, Mr. Wealand did so upon his advice, and the jury so found in Issue 8.

■ It has been held in Texas that liability should be determined on whether or not defendant "requested or directed" the arrest: Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1060; Hamilton v. California Co., Tex.Civ.App., 103 S.W.2d 200 (wr. dism.).

■■ Then, too, it has been held that complainant should not be held liable where proceedings taken by the judicial officer or magistrate are defective, or if the magistrate unlawfully directs arrest without warrant: 35 C.J.S. False Imprisonment § 28, p. 535. We think this general rule is pretty well accepted as, for example, in the case cited below, the court specifically inquired whether or not appellant store, or its agents, caused plaintiff or appellee to be falsely imprisoned. Of course there must be evidence to warrant the submission of such issues: Leon's Shoe Stores, Inc. v. Hornsby, Tex.Civ.App., 306 S.W.2d 402 (no writ history). It is apparent from the record that Mr. Wealand made full disclosure to the magistrate or justice of the peace, and the jury so found. Lack of such was one of the elements resulting in liability in the case cited just above, and we think a logical one. As pointed out in Gogue v. MacDonald, 35 Cal.2d 482, 218 P.2d 542, 21 A. L.R.2d 639, 642, it would seem unjust to hold someone guilty who has made an honest statement of the facts to a magistrate and then leaves to him such action as may be proper.

We do not find anywhere in the record that appellant, or any of its agents, made any suggestion that appellee Mrs. Reynolds be arrested, or that they took any part in or had any knowledge of her arrest until after the matter had taken place.

It is interesting to point out, too, that the jury found that Mrs. Reynolds did not pay the check under duress or illegal restraint. We do not dwell in detail on the efforts made by appellant to collect the check, as the jury found that appellant's assistant manager acted with probable cause in filing the complaint. There is ample evidence in the record to support this finding, based on his own testimony and that of other employees.

■ We recognize the rule that plaintiff may sue all, or single out any one, of a group of tort-feasors, but we do not think that rule has any application here, as we do not find that the appellant had any part in, knowingly or unknowingly, causing the illegal arrest and restraint, if any, of Mrs. Reynolds.

Summing up the entire situation, it cannot be denied that it was Mrs. Reynolds' own mistake in writing the name of the wrong bank on the draft that initiated the situation. It is in testimony that such check could not be cashed then by either bank, because she had no money in the First National Bank upon which the check was drawn, and of course her own bank, the First State Bank, could not pay a check that was not drawn upon it. Having initiated the matter by writing a check that was incapable of collection and thereby worthless, Mrs. Reynolds is guilty of making the first mistake. The appellant, being unable to collect its check after three or four months (the check bears three notations of appellant's attempt to call or contact Mrs. Reynolds, same being in August, September and October of 1955), took it to the magistrate or justice of the peace and, as the jury found, signed a complaint upon the advice and under the direction of the magistrate to whom he had been directed or conducted by an employee of the county attorney's office. He stands, therefore, in the position of having made a full disclosure of the facts to the magistrate, and then following the advice of said magistrate. There is no evidence that appellant or any of its agents said or did anything, other than this, to cause the arrest of the appellee, or that they knew she was going to be, or had been, arrested until the matter was over with. The jury has found, on ample evidence, that appellant acted with probable cause and without malice in making the complaint, and did so on the advice of the magistrate.

Now we think, to hold appellant liable under these circumstances, would be unfair and unrealistic and against the legal concept governing the law of torts. Certainly it would be remarkable to hold a defendant, under circumstances such as are here

present, liable for mistakes or torts of a magistrate or other officers, because that would imply that a person filing a complaint or initiating any sort of action of this type would have to, in effect, carry his own attorney with him to be sure that the magistrate and officers did nothing wrong. We do not think the law does, or ever did, contemplate such a state of facts. We think the defendant here was within his rights, having made a full disclosure of the facts, to sign the complaint on the advice of the magistrate. This was all he did. Therefore, we find no ground upon which defendant can here be held legally liable for the illegal arrest and detention, if any, of the appellee.

It must be borne in mind all through this controversy that this judgment is solely against the defendant, and not against any official. Also, it must be borne in mind, in considering the cases bearing on this point, that the illegal detention, if any, of defendant was not done by, or under the direction of, any agent or employee of the store, as is true in many of the cases cited.

 We think it elementary that the duties of the magistrate and other officers are prescribed by law, and, as such, they are under no obligation to take orders from the public. Such situation, of course, again points up, by reason of lack of control, the lack of responsibility on the part of he who has made a full disclosure of facts and acts with probable cause and without malice. The citizen cannot tell a magistrate his duties and therefore, of course, cannot control him and should not be held responsible for malfeasance in office of the official.

In closing, of course we understand that neither appellant, nor anyone, should ask a justice of the peace to collect a check; but, here, we do not find that such action was the cause of appellee's illegal restraint, if any. This, upon the unsworn complaint, was the act of the magistrate, and not the defendant. Prosser on Torts (2d Ed.), pages 48, 51 and 82; Kendel v. Guterl, 84 N.J.L. 533, 87 A. 84; Gogue v. MacDonald, 35 Cal.2d 482, 218 P.2d 542, 21 A.L.R.2d 639.

The judgment of the trial court is therefore reversed and rendered that plaintiff-appellee take nothing.